IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

Karen L. H.,[1]　　　　　　　　　　　　　　　　　　No. 3:17-cv-01750-HZ

　　　　　Plaintiff,　　　　　　　　　　　　　　　　OPINION & ORDER

　　　v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

　　　　　Defendant.

Merrill Schneider
Schneider Kerr & Robichaux
P.O. Box 14490
Portland, Oregon 97293

　　　　　Attorney for Plaintiff

Billy Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204

Alexis L. Toma
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104

　　　　　Attorneys for Defendant

---

[1] In the interest of privacy, this Opinion and Order uses only Plaintiff's first name and the initial of her last name.

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Karen L. H. brings this action for judicial review of the Commissioner's final decision denying her applications for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1382(c)(3)). The issues before the Court are whether the Administrative Law Judge ("ALJ") erred by: (1) failing to include all severe limitations at step two of the sequential analysis; (2) discrediting Plaintiff's testimony; (3) discrediting the lay testimony of Plaintiff's son, Dustin Damon Robert Brumitt; and (4) relying on occupations that represent an insufficient number of jobs available in the national economy to carry the Commissioner's burden at step five. For the reasons that follow, the Commissioner's decision is reversed and remanded for further administrative proceedings consistent with this Opinion and Order.

## BACKGROUND

Plaintiff filed applications for DIB and SSI on July 25, 2013, in which she alleged a disability-onset date of February 28, 2002. Tr. 185, 187.[2] Plaintiff's applications were denied initially and upon reconsideration. Plaintiff's administrative hearing was held on February 4, 2016, before ALJ S. Andrew Grace. Tr. 39–63. In a written decision issued May 17, 2016, ALJ Grace found Plaintiff not disabled. Tr. 20–33. On August 28, 2017, the Appeals Council denied review, rendering ALJ Grace's decision final. Tr. 1–5.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

---

[2] "Tr." refers to the administrative record transcript, filed here as ECF 14.

§ 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since February 28, 2002, the alleged onset date. Tr. 22–23.

At step two, the ALJ determined Plaintiff had the following severe impairments: hypertension, obesity, "hernia status post repair," neuropathy, recurrent kidney stones, and anxiety. Tr. 23–25.

At step three, the ALJ found Plaintiff's impairments or combination of impairments did not meet or equal the severity of one of the listed impairments. Tr. 25–27.

Before step four, the ALJ determined Plaintiff had the RFC to perform work consistent with the following limitations:

> [T]he claimant had the residual functional capacity to perform sedentary work, which is defined in 20 CFR 404.1567(a) and 416.967(a) except her postural activities are restricted to only occasional climbing ramps/stairs, balancing, stooping, kneeling, and crouching. Additionally, she can never climb ladders/ropes/scaffolds and never crawl. The residual functional capacity includes a limitation to simple, repetitive, and routine tasks consistent with unskilled work. Additionally, she is limited to low stress work, which is defined as work requiring few decisions and few changes. A further restriction is to only occasional contact with the public and coworkers. The claimant is able to frequently finger and feel with the dominant right hand.

Tr. 25–30.

At step four, the ALJ determined Plaintiff did not have any past relevant work. Tr. 31.

At step five, the ALJ concluded other jobs existed in the national economy that Plaintiff could perform, including work as an addresser and charge account clerk. Tr. 32. Accordingly, the ALJ concluded Plaintiff was not disabled. Tr. 33.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

DISCUSSION

Plaintiff contends the ALJ's decision was not supported by substantial evidence and contains four legal errors. First, the ALJ failed to include several severe impairments at step two of the sequential analysis. Second, the ALJ improperly discredited Plaintiff's testimony. Third, the ALJ improperly discredited the lay opinion of Plaintiff's son, Dustin Damon Robert Brumitt. Fourth, the ALJ relied on an insufficient number of jobs available in the national economy to find Plaintiff not disabled at step five.

**I.  Step Two**

Plaintiff contends the ALJ improperly excluded several impairments from his analysis at step two. In particular, Plaintiff asserts the ALJ failed to consider Plaintiff's panic disorder with agoraphobia, tachycardia and abnormal heart rate, vertigo, gastroesophageal reflux disease ("GERD"), facial palsy, back and ankle pain, and irritable bowel syndrome at step two.

Step two of the five-step disability inquiry is a *de minimis* screening used to eliminate groundless claims. *Yuckert*, 482 U.S. at 153–154 (1987); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (holding that ALJ should have continued the sequential disability analysis beyond step two because there was not substantial evidence showing that the plaintiff's claim was groundless). An impairment or combination of impairments can be determined "not severe" only if evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85–28, 1985 WL 56856, at *2. If the ALJ determines that an impairment is a severe medically determinable one, the analysis proceeds to step three. *Keyser v. Commissioner Social Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). Error at step two is harmless, however, when the ALJ nonetheless proceeds in the disability analysis and considers the symptoms and limitations arising from the erroneously omitted condition in the formulation of the claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

Aside from providing a general legal standard and some citations to limited portions of the record in which each of the conditions is discussed, Plaintiff does not provide any meaningful condition-specific argument as to how the record evidence establishes the ALJ erred when he did not include each condition at step two. The Court finds Plaintiff's argument that the ALJ erred by failing to include panic disorder with agoraphobia at step two to be meritless because the ALJ explicitly included the impairment characterized as "panic disorder with agoraphobia" in the ALJ's treatment of Plaintiff's anxiety at step two. Tr. 24.

With respect to Plaintiff's tachycardia, abnormal heart rate, and chest pains, the ALJ concluded Plaintiff's tachycardia resolved after mold was eliminated from Plaintiff's home (Tr. 513) and that despite numerous tests there was not any other identifiable medical explanation for

Plaintiff's other heart-related impairments. This finding is supported by ample evidence in the record. *See, e.g.*, Tr. 551, 712, 740, 1046, 1269. On balance the record supports the ALJ's implicit conclusion that hypertension and anxiety disorder were the appropriate diagnoses through which to consider Plaintiff's heart-related limitations at subsequent steps of the sequential analysis.[3]

Finally, although Plaintiff is correct that there are some references in the record to vertigo, GERD, facial palsy, back and ankle pain, and irritable bowel syndrome, the record does not reflect that any of those conditions imposed any longstanding work-related limitations on Plaintiff that the ALJ had not already considered as part of any of the conditions that the ALJ found to be severe. Accordingly, the Court finds the ALJ did not err when he failed to include vertigo, GERD, facial palsy, back and ankle pain, and irritable bowel syndrome as severe limitations at step two.

On this record, therefore, the Court concludes the ALJ did not err at step two when he did not find panic disorder with agoraphobia, tachycardia and abnormal heart rate, vertigo, GERD, facial palsy, back and ankle pain, and irritable bowel syndrome to be standalone severe impairments.

## II.    Plaintiff's Testimony

Plaintiff contends the ALJ improperly rejected her testimony regarding the severity and extent of her limitations. The ALJ is responsible for determining credibility. *Vasquez*, 572 F.3d at 591. Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm. Soc. Sec.*

---

[3] The ALJ's finding in this respect is also consistent with Plaintiff's hearing testimony. Tr. 48.

7 – OPINION & ORDER

*Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on 'clear and convincing reasons'"); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms") (internal quotation marks omitted).

When determining the credibility of a plaintiff's complaints of pain or other limitations, the ALJ may properly consider several factors, including the plaintiff's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may also consider the ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (internal quotation marks omitted). As the Ninth Circuit further explained in *Molina*;

> While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.] Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

674 F.3d at 1112–13 (internal citations and quotation marks omitted).

At the February 4, 2016, hearing, Plaintiff testified she visited the emergency room on multiple occasions in 2013, 2014, and 2015 as a result of her blood pressure and anxiety. Tr. 48. At that hearing, however, Plaintiff indicated her blood pressure was stable and had come under better control as a result of medications. Tr. 48–49. With respect to her anxiety, Plaintiff testified she sought mental-health treatment for approximately six months in 2014 and that she found the treatment helpful, but that she discontinued treatment because she "gained as much knowledge as [she] could in regards to managing [her] symptoms" and did not feel any need to reengage mental-health services. Tr. 50–51. Nonetheless, Plaintiff indicated she still experiences panic attacks that force her to isolate herself from others and lose her concentration. Tr. 55–57. Plaintiff also testified she experiences neuropathy in her feet and right hand that makes it difficult to grip items and causes pain and loss of sensation in her feet. Tr. 51–52, 54. As a result of her neuropathy, Plaintiff testified she is able to walk for only 15 minutes at a time before experiencing shooting pains that "bring [her] to tears." Tr. 58.

In her Adult Function Report dated September 13, 2013, Plaintiff reported she experiences anxiety and panic attacks that disrupt her sleep and force her to stop whatever she is doing during the day. Tr. 231. In addition, Plaintiff wrote she has "a hard time exerting [herself]" due to high blood pressure. Tr. 231. Plaintiff indicated she cares for her children and can perform all daily and personal-care activities, except that "[s]ometimes they must be put on hold." Tr. 232–33. Plaintiff also reported she is able to leave her house alone, except that she requires somebody to accompany her if she is experiencing anxiety. Tr. 234. Plaintiff wrote that her anxiety is worse in crowded spaces, and that she no longer rides public transit as a result. Tr. 236. Plaintiff indicated her conditions affect her abilities to walk, talk, hear, see, complete tasks,

concentrate, and understand. Tr. 236. Plaintiff reported she can walk for "several city blocks," and can pay attention and complete tasks unless she is having an anxiety or panic attack. Tr. 236. Plaintiff reported she must "immediately check on family members [and] make sure they're okay" when she has a panic or anxiety attack. Tr. 237.

The ALJ discredited Plaintiff's testimony because medical evidence was inconsistent with Plaintiff's allegations, Plaintiff's blood pressure was controlled by medications, Plaintiff elected to terminate mental-health treatment, and Plaintiff's level of daily activity was inconsistent with Plaintiff's allegations of disability.

The ALJ's finding that the medical record was not consistent with Plaintiff's allegations is supported by substantial evidence. Although Plaintiff reported she has "a hard time exerting herself," an exercise stress test performed on December 12, 2013, indicated Plaintiff had a "[f]air exercise capacity for [her] age." Tr. 231, 785, 1046. With respect to Plaintiff's allegations of pain in her hands and feet, the medical record contains no record of any such complaints until December 23, 2014, when Plaintiff first complained of "nerve pains" in her feet. Tr. 1640. Plaintiff visited a podiatrist on June 4, 2015, June 25, 2015, August 13, 2015, and October 8, 2015, but the cause of her foot pain remained unclear. Tr. 1704, 1752, 1756, 1760–61. Nonetheless, Plaintiff told other treatment-providers on June 18, 2015, that she "frequently walks for exercise," and on November 20, 2015, that she walks at a "mod[erate] to brisk" rate for "2 hours . . . 4 days per week." Tr. 1736, 1746. These reports directly contradict Plaintiff's February 4, 2016, testimony that she can only walk for 15 minutes before requiring rest. Tr. 58. With respect to the right-hand limitations that Plaintiff testified began two months before the hearing and limited her ability to grasp objects, there is not any medical evidence in the record to support

Plaintiff's allegations even though Plaintiff had an opportunity to submit additional medical records at the time of the hearing or thereafter. Tr. 54.

The ALJ also reasonably concluded Plaintiff's blood pressure was controlled by medications. Although Plaintiff had periods during which she sought emergency treatment in part because of her blood pressure, even in those instances Plaintiff's blood pressure improved shortly after receiving treatment and testing did not indicate any underlying heart condition. Tr. 551, 1080, 1111, 1146–47, 1204–05, 1239–40. Nonetheless, through extended periods of the record Plaintiff's blood pressure was well-controlled by medication, and, despite occasional acute flare-ups, does not appear to have caused Plaintiff significant day-to-day functional limitations. *See, e.g.*, Tr. 600, 757, 787.

Finally, the ALJ reasonably concluded Plaintiff's allegations of significant anxiety were inconsistent with her sparse history of mental-health treatment. Plaintiff first obtained treatment for anxiety in June 2011. Tr. 823. Less than two months later, however, Plaintiff discontinued treatment because her anxiety was "under control" and she was "feeling optimistic about her future." Tr. 816. Plaintiff obtained some medication management for anxiety from her primary care physician in June 2013, and by September 9, 2013, Plaintiff's anxiety was under "much improved control." Tr. 517, 537. In October 2014 Plaintiff initiated mental-health treatment at Sequoia Mental Health Services and made "good progress" after engaging in therapy, but terminated further treatment because, Plaintiff reported, she wanted to "find a provider closer to home." Tr. 831–32. There is not any indication in the record that Plaintiff ever sought to reestablish treatment. Moreover, this evidence conflicts with Plaintiff's testimony that she discontinued treatment and had not considered reengaging mental-health services because she "had gained as much knowledge as [she] could in regards to managing [her] symptoms," and

11 – OPINION & ORDER

"[she] didn't feel, and the counselor didn't feel that [she] needed to go any further." Tr. 50–51. The ALJ reasonably concluded that Plaintiff's testimony of significant anxiety that adversely affected her physical health was undermined by Plaintiff's failure to obtain consistent treatment for her anxiety.

On this record, therefore, the Court concludes the ALJ did not err when he discredited Plaintiff's testimony because he provided legally sufficient reasons for doing so.

### III.     Lay Testimony of Dustin Damon Robert Brumitt

Plaintiff next contends the ALJ erred when he discredited the testimony of Plaintiff's son, Dustin Damon Robert Brumitt. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay-witness testimony cannot be disregarded without comment and the ALJ must give germane reasons for discounting such testimony. *Molina*, 674 F.3d at 1114. Germane reasons must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009) (citing *Stout*, 454 F.3d at 1053). Germane reasons for discounting lay-witness testimony include conflicts with medical evidence and inconsistency with the plaintiff's daily activities. *Lewis v. Apfel*, 236 F.3d 503, 511–12 (9th Cir. 2001). Another germane reason to discredit lay testimony is that it is substantially similar to the claimant's validly discredited allegations. *Valentine*, 574 F.3d at 694.

Brumitt submitted a Third Party Function Report dated November 27, 2013, in which he indicated he spends time with Plaintiff "every week or two." Tr. 239. Brumitt reported "[p]hysical exertion causes [Plaintiff's] heart to race thus causing symptoms to worsen," and that Plaintiff cannot reliably work because "random 'episodes' . . . make[] her have to stop what she's doing." Tr. 239. Brumitt indicated Plaintiff's conditions have made it so she can no longer

"[c]omplete all tasks home [and] work-related without putting her life on hold because of symptoms that randomly occur." Tr. 240. Brumitt also reported Plaintiff experiences "nocturnal panic attacks that keep her from falling back asleep and her symptoms wake her up throughout the night." Tr. 240. Brumitt wrote that Plaintiff "is afraid of going out in public because her symptoms occur randomly," and that Plaintiff "doesn't go for walks anymore." Tr. 243.

The ALJ discredited Brumitt's testimony on the basis that (1) Brumitt did not spend enough time with Plaintiff to establish firsthand knowledge of her functional abilities and (2) his testimony merely repeated Plaintiff's testimony, which the ALJ found not to be fully credible.

The Court disagrees with the ALJ's finding that Brumitt did not spend sufficient time with Plaintiff, his mother, to establish at least some firsthand knowledge of Plaintiff's functional capacity. Contrary to the ALJ's rationale, an individual who sees a claimant on a weekly or near-weekly basis can establish a sufficient firsthand knowledge of the claimant's functional abilities to provide competent testimony.

Nonetheless, the ALJ reasonably found that Brumitt's testimony appears in significant part to be based on Plaintiff's reporting. Brumitt, for example, submitted testimony regarding Plaintiff's sleep disturbances, a matter on which there is no apparent basis for him to have firsthand knowledge outside of Plaintiff's reports. Similarly, as the ALJ also noted, Brumitt's testimony regarding Plaintiff's ability to exercise and the frequency with which she walks for exercise appears to be based on Plaintiff's report, and, as noted, is contradicted by the medical evidence.

Accordingly, on this record the Court concludes the ALJ did not err when he discredited Brumitt's lay testimony.

**IV. Step Five**

Plaintiff contends the ALJ's finding at step five that Plaintiff could perform other work that existed in significant numbers in the national economy was erroneous because (1) the ALJ improperly found Plaintiff could perform work as a charge account clerk that exceeds Plaintiff's RFC as to reasoning; and (2) the 7,400 addresser jobs that exist in the national economy are insufficient to constitute a "significant number" of jobs. Defendant acknowledges the requirements of the charge account clerk occupation exceed Plaintiff's RFC as to reasoning, but nonetheless contends the 7,400 addresser jobs are enough to carry the Commissioner's burden at step five.

The Ninth Circuit has found that 25,000 jobs existing in the national economy is sufficient to carry the Commissioner's step-five burden of demonstrating that "significant numbers" of such jobs exist. *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014). In the context of assessing harmless error, the Ninth Circuit has suggested that "10,000 . . . jobs found by the expert may not amount to a significant number of jobs in the national economy," *Randazzo v. Berryhill*, 725 F. App'x 446, 448 (9th Cir. 2017), and observed that although the Ninth Circuit has "'never set out a bright-line rule for what constitutes a 'significant number' of jobs,' it is not clear that [5,000 jobs nationally] are sufficient." *De Rivera v. Berryhill*, 710 F. App'x 768, 769 (9th Cir. 2018) (quoting *Gutierrez*, 740 F.3d at 528–29). Caselaw in this District casts further doubt on whether fewer than 25,000 jobs existing in the national economy – and certainly fewer than 10,000 jobs in the national economy – can constitute "significant numbers" such that they are sufficient to carry the Commissioner's burden at step five. *See Lisa L. v. Comm'r Soc. Sec.*, No. 3:17-cv-01874, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018).

The Court, therefore, concludes the 7,400 addresser jobs available in the national economy do not constitute jobs available in significant numbers in the national economy. Accordingly, on this record the Court finds the ALJ erred at step five.

V.      **Remand**

Because the Court concludes the ALJ's decision contained a harmful legal error and, therefore, was not supported by substantial evidence in the record, the remaining question is whether this case should be remanded for further administrative proceedings or an immediate award of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1177–78 (9th Cir. 2000). The Ninth Circuit applies the "credit-as-true" rule for determining whether remand for an immediate award of benefits is proper. *Garrison*, 759 F.3d at 1020. Each of the following must be satisfied to justify an immediate award of benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* Even if those requirements have been met, the district court retains the flexibility to remand the case for further proceedings, particularly where the record as a whole creates serious doubts that the claimant is disabled. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).

On this record the Court concludes the record has not been fully developed and there remains a need for further administrative proceedings. Although the vocational expert (VE) relied on the addresser and charge account clerk jobs in his answer to the ALJ's question regarding whether jobs existed in significant numbers in the national economy that Plaintiff could perform, the VE did not indicate whether there may be other occupations available to Plaintiff. *See* Tr. 60. At a minimum, therefore, additional VE testimony is necessary to determine

whether there are jobs that exist in significant numbers in the national economy that are available to Plaintiff.

Accordingly, the Court concludes remand to the Commissioner for further administrative proceedings is appropriate.

CONCLUSION

For these reasons, the Commissioner's decision is reversed and remanded for further administrative proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 15 day of January, 2019.

_____
MARCO A. HERNÁNDEZ
United States District Judge